## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

| | | |
|---|---|---|
| ANGELA W. BAKER and | ) | |
| BILLY E. BAKER, | ) | |
| | ) | |
| Plaintiffs, | ) | **Civil Action No. 5:16-cv-00276** |
| | ) | |
| vs. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

### I.    INTRODUCTION

1.    This action is brought by Plaintiffs Angela W. Baker and Billy E. Baker (collectively "the Bakers") against Defendant Wells Fargo Bank, N.A. ("Wells Fargo") for violations of the Bankruptcy Code, the North Carolina Debt Collection Act ("NCDCA"), and, alternatively, the North Carolina Collection Agency Act ("NCCAA").

### II.    JURISDICTION

2.    Jurisdiction arises pursuant to 28 U.S.C. § 1331 and 1334. Jurisdiction over state law claims arises pursuant to 28 U.S.C. § 1367.

3.    Venue is proper as all relevant events occurred here.

### III.    PARTIES

4.    Plaintiff Angela W. Baker is an individual that lives in Youngsville, North Carolina.

5.    Ms. Baker has a mortgage account serviced by Wells Fargo. This is a "debt" as defined by the NCDCA, N.C.Gen.Stat. § 75-50(2), and NCCAA, N.C.Gen.Stat. § 58-70-90(3).

6.    Ms. Baker is a "consumer" as defined by the NCDCA, N.C.Gen.Stat. § 75-50(1), and

NCCAA, N.C.Gen.Stat. § 58-70-90(2).

7.      Ms. Baker is a "debtor" as contemplated by the Bankruptcy Code.

8.      Plaintiff Billy E. Baker is an individual that lives in Youngsville, North Carolina.

9.      Mr. Baker is a "consumer" as defined by the NCDCA, N.C.Gen.Stat. § 75-50(1), and NCCAA, N.C.Gen.Stat. § 58-70-90(2).

10.      Mr. Baker is a "debtor" as contemplated by the Bankruptcy Code.

11.      Defendant Wells Fargo Bank, N.A. is a multinational banking and financial services holding company headquartered in San Francisco, California.

12.      Among other things, Defendant services mortgage accounts.

13.      Defendant maintains a registered agent in Raleigh, North Carolina.

14.      Defendant is engaged in the collection of debts from North Carolina consumers using the mail and telephone.

15.      Defendant engages, directly or indirectly, in debt collection from consumers.

16.      Defendant was and is a "debt collector" as defined by N.C.Gen.Stat. § 75-50(3).

17.      Defendant was and is a "collection agency" as defined by N.C.Gen.Stat. § 58-70-15(a) and 90(1).

## IV.   FACTUAL ALLEGATIONS

### A.   Ms. Baker's Mortgage Account

18.      At all times relevant hereto, the Bakers were owners of record of certain real property located at 55 King Charles Drive in Youngsville, North Carolina (the "Property"). They continue to reside at the Property with their 13- and 11-year-old children, where the Bakers have resided for nearly fifteen years. Secured by the Property, Ms. Baker had and continues to have a mortgage loan account serviced by Wells Fargo, which account number ends with 1736 ("the Account").

19.     The Bakers experienced the Great Recession similar to many other families. In 2008, Mr. Bakers' home-improvement business took a downturn after several years of success. The Bakers had to use credit cards and other loans to make up for the lost income and to address the medical bills that were piling up. It was increasingly difficult for them to make their mortgage payments, and in 2009 they started to reach the breaking point.

20.     In early 2009, after seven years of timely payments, the Bakers became a month behind on their payments. They continued to pay every month, but every month they were a month behind. The Bakers sought help from Wells Fargo; however, after twice sending in the required paperwork, Wells Fargo twice claimed that they did not receive the paperwork or had otherwise lost it.

21.     In early 2010, the they became two months behind on their payments. In April 2010, at Wells Fargo's suggestion to qualify for its mortgage relief program, the Bakers stopped payments entirely. Yet, Brock & Scott, PLLC, as substitute trustee, initiated foreclosure proceedings against both Ms. Baker and Mr. Baker in the North Carolina General Court of Justice, Superior Court Division, Franklin County.

**B.      The Bakers' Bankruptcy**

22.     On July 30, 2010, the Bakers filed a Voluntary Petition under Chapter 13 of the United States Bankruptcy Code ("the Petition"). *See* Case # 10-06070 (Bky. E.D.N.C.), Docket # 1 (hereinafter "Bankruptcy Docket ___").

23.     On August 12, 2010, Wells Fargo filed a Proof of Claim, asserting a security interest against the Property. Bankruptcy Docket, Proof of Claim # 3.

24.     On August 16, 2010, Wells Fargo filed an Amended Proof of Claim, asserting a security interest against the Property. Wells Fargo's Amended Proof of Claim stated, among other

things, that the "total prepetition arrearages due" was $10,188.62. Bankruptcy Docket, Proof of Claim # 3-2.

25.     On January 5, 2011, this Court entered an order confirming the proposed Chapter 13 Plan ("Confirmation Order"). Bankruptcy Docket # 27.

26.     The Confirmation Order required the Trustee to disburse ongoing monthly payments to Wells Fargo, with Ms. Baker to resume direct payments upon completion of plan payments. The Confirmation Order further provided that the amount of arrearage regarding Wells Fargo's claim totaled $10,188.62. *See* Minutes of 341 Meeting and Motion for Confirmation of Plan, Bankruptcy Docket # 24, ¶¶ 10b and c (p. 3).

27.     The Bakers' Chapter 13 Plan was later modified to include payments for a home equity line of credit, secured by the Property in favor of Wells Fargo. This line of credit was paid in full during the bankruptcy, and Wells Fargo appears to treat that debt as paid in full. *See* Motion to Modify Plan, Bankruptcy Docket # 36, ¶¶ 2-3; Order Modifying Chapter 13 Plan, Bankruptcy Docket # 37.

28.     The Bakers made all payments required under the Confirmed Plan.

29.     On August 20, 2015, Trustee John F. Logan sent a letter to the Bakers stating, among other things:

> **This letter is to advise you that you have completed the payments under your confirmed Chapter 13 Plan.** Please do not make any additional payments to our office.
>
> Accordingly please resume making your mortgage payment in the amount of **$1,195.09** directly to WELLS FARGO BANK, NA, beginning with the payment due **September 01, 2015**.

This letter was also sent to Wells Fargo and its attorney Sean M. Corcoran of Brock & Scott, PLLC.

30.     On October 28, 2015, pursuant to Federal Rule of Bankruptcy Procedure 3002.1(f),

Trustee John F. Logan filed his Notice of Final Cure Payment and Completion of Payments Under the Plan ("Notice of Final Cure"), indicating that "[t]he amount required to cure the default in the claim listed below has been paid in full and the Debtors have completed all payments under the Plan." The Notice of Final Cure further stated:

> **Creditor:**      <u>WELLS FARGO BANK, NA</u>
> **Court Claim#:**   <u>3-2</u>
> **Account#:**       <u>1736</u>
>
> The Trustee has disbursed a total of <u>$67,339.99</u> to the Creditor representing post-petition mortgage payments for the months <u>October 2010</u> through <u>August 2015</u>. All post-petition contractual mortgage payments owed to the Creditor have been paid through and including the August 2015 payment. **As of <u>August 21, 2015</u> the total amount due on this mortgage was <u>$98,575.77</u>.** The Trustee has instructed the Debtors to resume making the contractual monthly mortgage payments directly to the Creditor beginning with the payment due on <u>September 1, 2015</u>.
>
> In addition to the contractual post-petition mortgage payments, the Creditor was also allowed a pre-petition arrearage claim in the amount of <u>$10,188.62</u>. This claim has been paid in full.
>
> Within 21 days of the service of this Notice, the Creditor **MUST** file and serve a statement on the Debtors, Debtors' counsel and the Chapter 13 Trustee, pursuant to Federal Rule of Bankruptcy Procedure 3002.1(g), indicating: whether it agrees that the Debtors have paid in full the amount required to cure the default on the claim, and whether the Debtors are otherwise current on all payments consistent with 11 U.S.C. § 1322(b)(5). Should the holder of the claim fail to fully comply, sanctions may be ordered under Federal Rule of Bankruptcy Procedure 3002.1(i).

*See* Notice of Final Cure, Bankruptcy Docket # 42, p. 1 (emphasis in original). The Notice of Final Cure was served by mail on, among others, Wells Fargo (through two different addresses) and its attorney Sean M. Corcoran. *Id.* at p. 2.

31.    On November 16, 2015, Wells Fargo filed its Response to Notice of Final Cure Payment ("Response to Notice of Final Cure"). In its Response to Notice of Final Cure Wells Fargo

stated that, regarding Proof of Claim 3, "As of 11/13/15, Debtor(s) has paid in full the amount required to cure the default on the Creditor's claim." Wells Fargo stated further that "As of 11/13/15, the Creditor agrees that the Debtor(s) is current with all post petition payments consistent with Section 1322(b)(5) including all fees, charges, expenses, escrow and costs. Debtor(s) is due post petition for 11/1/15." Bankruptcy Docket # 43, Part 1.

32.    In its Response to Notice of Final Cure Wells Fargo stated that the "Total Claim Amounts not cured by Debtor(s)" was $0.00. Bankruptcy Docket # 43, Part 2.

33.    In its Response to Notice of Final Cure Wells Fargo stated that the "Total post-petition payments, fees, expenses and charges not cured by Debtor(s)" was $0.00. Bankruptcy Docket # 43, Part 3.

34.    On November 19, 2015, Trustee Logan filed his Motion to Declare Mortgage Payment Current. Bankruptcy Docket # 44. Therein, Mr. Logan identified the "Creditor" as Wells Fargo and stated, among other things:

> 3.    The Trustee has disbursed a total of $67,339.99 to the Creditor representing post-petition mortgage payments for the months October 2010 through August 2015 []. All post-petition, contractual mortgage payments owed to the Creditor, have been paid through and including the August 2015 payment.
>
> 4.    In addition to the contractual post-petition mortgage payments, the Creditor was also allowed a pre-petition arrearage claim in the amount of $10,188.62. This claim has been paid in full.
>
> 5.    Other than as stated herein, the Trustee is not aware of any other permissible fees, expenses, or charges accruing on the Mortgage Loan from the Petition date through the date of this Motion that have not been paid.
>
> 6.    Based on the foregoing information available to the Trustee, the Creditor was served with a Notice of Final Cure Payment

and Completion of Payments Under the Plan complying with Federal Rule of Bankruptcy Procedure 3002.1(f) and (g).

7. The Creditor [previously identified in the Motion as Wells Fargo] has filed a Response containing a statement agreeing that the Debtors were current with all post petition payments due and owing as of August 21, 2015.

8. The claim of the Creditor was allowed as a long-term debt pursuant to the provisions of 11 U.S.C. § 3002.1(f) and (g).

9. The Creditor should be required to treat the Debtors' mortgage as reinstated and fully current in all obligations under the mortgage through and including the August 2015 payment.

10. The Debtors have completed the Plan and are entitled to entry of a discharge. The Debtors shall resume making regular ongoing mortgage payments to the Creditor beginning with the payment due on September 01, 2015.

*See* Motion to Declare Mortgage Payment Current, Bankruptcy Docket # 44, ¶¶ 3-10.

35. Wells Fargo did not file a response to Trustee Logan's Motion to Declare Mortgage Payment Current.

36. On December 16, 2015, Judge David M. Warren of the United States Bankruptcy Court for the Eastern District of North Carolina entered an Order Declaring Mortgage Payment Current, which identified the "Creditor" as Wells Fargo and found:

3. WELLS FARGO BANK, NA ("Creditor") filed a claim in this case (Court Claim #3-2) secured by the Debtors' residence. The Trustee has disbursed a total of $67,339.99 to the Creditor, representing contractual post-petition mortgage payments for the months October 2010 through August 2015. All post-petition contractual mortgage payments owed to the Creditor, have been paid through and including the August 2015 payment.

4. In addition to the contractual post-petition mortgage payments, the Creditor was also allowed a pre-petition arrearage claim in the amount of $10,188.62. This claim has

been paid in full.

5.      The claim of the Creditor was allowed as a long-term debt pursuant to the provision of 11 U.S.C. § 1322(b)(5).

6.      There are no other permissible fees, expenses, or charges accruing on the Mortgage Loan from the Petition date through the date of the Motion that have not been paid.

7.      The Creditor was served with a Notice of Final Cure Payment and Completion of Payments Under the Plan complying with Federal Rule of Bankruptcy Procedure 3002.1(f) and (g).

8.      The Creditor has filed a Response containing a statement agreeing that the Debtors were current with all post petition payments due and owing as of August 21, 2015.

9.      The Trustee filed a Motion to Declare Mortgage Payment current on November 19, 2015.

10.     The Debtors have completed the Plan and are entitled to entry of a discharge.

*See* Order Declaring Mortgage Payment Current, Bankruptcy Docket # 45, pp. 1-2, ¶¶ 3-10.

37.     Judge Warren's Order Declaring Mortgage Payment Current specifically ordered:

1.      The Creditor shall treat the Debtors' mortgage as reinstated and fully current in all obligations under the mortgage through and including the August 2015 payment.

2.      The principal amount due and owing to the Creditor as of August 21, 2015 was $98,575.77.

3.      The Debtors shall begin making the contractual monthly payments directly to the Creditor beginning September 01, 2015.

*See* Order Declaring Mortgage Payment Current, Bankruptcy Docket # 45, p. 2, ¶¶ 1-3.

38.     On December 31, 2015, Judge Warren entered an Order of Discharge, stating, "A discharge under 11 U.S.C. § 1328(a) is granted to: Billy Earl Baker and Angela Wilson Baker." *See* Order of Discharge, Bankruptcy Docket # 47. The Order of Discharge was served electronically on,

among others, Wells Fargo (six times) and Wells Fargo's attorneys Sean M. Corcoran and William E. Grantmyre, Jr. *See* Certificate of Notice, Bankruptcy Docket # 48.

39.     On January 12, 2016, Trustee John F. Logan filed his Trustee's Final Report and Account and Notice Thereof ("Trustee's Final Report"). The Final Report stated, among other things:

> **You are hereby given Notice that you have thirty (30) days from the date of this Final Report and Account and Notice Thereof to file an objection hereto and request for hearing with the Clerk of the Bankruptcy Court. *** If no objections and requests for hearing are filed within such thirty (30) day period, there shall be a presumption that the estate has been fully administered, the estate will be closed, and the Trustee and the surety on the Trustee's bond will be released.**

*See* Trustee's Final Report, Bankruptcy Docket # 49 (emphasis in original).

40.     Wells Fargo did not file an objection or other response to the Trustee's Final Report.

**C.     Payments Made by Ms. Baker Directly to Wells Fargo**

41.     On September 1, 2015 Ms. Baker made payment to Wells Fargo in the amount of $1,195.09. The payment was credited to the Account on September 1, 2015.

42.      On October 2, 2015 Ms. Baker made payment to Wells Fargo in the amount of $1,195.09. The payment was credited to the Account on October 2, 2015.

43.     On November 2, 2015 Ms. Baker made payment to Wells Fargo in the amount of $1,195.09. The payment was credited to the Account on November 2, 2015.

44.     On December 3, 2015 Ms. Baker made payment to Wells Fargo in the amount of $1,195.09. The payment was credited to the Account on December 3, 2015.

45.     On December 31, 2015 Ms. Baker made payment to Wells Fargo in the amount of $1,195.09. The payment was credited to the Account on December 31, 2015.

46.     On February 2, 2016 Ms. Baker made payment to Wells Fargo in the amount of $1,195.09. The payment was credited to the Account on February 2, 2016.

47.     On March 3, 2016 Ms. Baker made payment to Wells Fargo in the amount of $1,195.09. The payment was credited to the Account on March 3, 2016.

48.     On April 4, 2016, Ms. Baker made payment to Wells Fargo in the amount of $1,328.28. The payment was credited (inaccurately) to the Account on April 4, 2016.

49.     On May 4, 2016, Ms. Baker made payment to Wells Fargo in the amount of $1,328.28. The payment was credited to the Account on May 4, 2016.

50.     Ms. Baker has made every required payment directly to Wells Fargo since she and Mr. Baker received Trustee Logan's August 10, 2015, letter.

**D.     Inaccurate Communications from Wells Fargo During the Bankruptcy**

51.     On or around June 11, 2015, Wells Fargo sent Ms. Baker a statement dated June 11, 2015. Therein Wells Fargo included the following "Payment summary":

| | |
|---|---|
| Principal | $270.15 |
| Interest | $589.42 |
| Escrow | $335.52 |
| **Current payment** 07/01/15 | **$1,195.09** |
| Unpaid payment 04/01/15-06/01/15 | $3,553.35 |
| **Total payment** | **$4,748.44** |

Additionally, it included a "Payment date" of 07/01/15.

52.     On or around June 16, 2015, Wells Fargo sent Ms. Baker a statement dated June 16, 2015. Therein Wells Fargo included the following "Payment summary":

| | |
|---|---|
| Principal | $270.15 |
| Interest | $589.42 |
| Escrow | $335.52 |
| **Current payment** 07/01/15 | **$1,195.09** |

Unpaid payment 04/01/15-06/01/15      $3,553.35
**Total payment**      **$4,748.44**

Additionally, it included a "Payment date" of 07/01/15.

53.      On or around June 26, 2015, Wells Fargo sent Ms. Baker a statement dated June 26, 2015. Therein Wells Fargo included the following "Payment summary":

| | |
|---|---|
| Principal | $270.15 |
| Interest | $589.42 |
| Escrow | $335.52 |
| **Current payment** 07/01/15 | **$1,195.09** |
| Unpaid payment 05/01/15-06/01/15 | $2,390.18 |
| **Total payment** | **$3,585.27** |

Additionally, it included a "Payment date" of 07/01/15.

54.      On or around June 29, 2015, Wells Fargo sent Ms. Baker a statement dated June 29, 2015. Therein Wells Fargo included the following "Payment summary":

| | |
|---|---|
| Principal | $270.15 |
| Interest | $589.42 |
| Escrow | $335.52 |
| **Current payment** 07/01/15 | **$1,195.09** |
| Unpaid payment 06/01/15 | $1,195.09 |
| **Total payment** | **$2,390.18** |

Additionally, it included a "Payment date" of 07/01/15.

55.      On or around July 16, 2015, Wells Fargo sent Ms. Baker a statement dated July 16, 2015. Therein Wells Fargo included the following "Payment summary":

| | |
|---|---|
| Principal | $271.72 |
| Interest | $587.85 |
| Escrow | $335.52 |
| **Current payment** 08/01/15 | **$1,195.09** |
| Unpaid payment 06/01/15-07/01/15 | $2,390.18 |

|                              |            |
| ---------------------------- | ---------- |
| **Total payment**            | **$3,585.27** |

Additionally, it included a "Payment date" of 08/01/15.

56.     On or around July 29, 2015, Wells Fargo sent Ms. Baker a statement dated July 29, 2015. Therein Wells Fargo included the following "Payment summary":

| Principal                    |            |
| ---------------------------- | ---------- |
| Principal                    | $271.72    |
| Interest                     | $587.85    |
| Escrow                       | $335.52    |
| **Current payment** 08/01/15 | **$1,195.09** |
| Unpaid payment 07/01/15      | $1,195.09  |
| **Total payment**            | **$2,390.18** |

Additionally, it included a "Payment date" of 08/01/15.

57.     On or around August 17, 2015, Wells Fargo sent Ms. Baker a statement dated August 17, 2015. Therein Wells Fargo included the following "Payment summary":

| Principal                       |            |
| ------------------------------- | ---------- |
| Principal                       | $273.31    |
| Interest                        | $586.26    |
| Escrow                          | $335.52    |
| **Current payment** 09/01/15    | **$1,195.09** |
| Unpaid payment 07/01/15-08/01/15 | $2,390.18  |
| **Total payment**               | **$3,585.27** |

Additionally, it included a "Payment date" of 09/01/15.

58.     On or around September 2, 2015, Wells Fargo sent Ms. Baker a statement dated September 2, 2015. Therein Wells Fargo included the following "Payment summary":

| Principal                       |            |
| ------------------------------- | ---------- |
| Principal                       | $274.90    |
| Interest                        | $584.67    |
| Escrow                          | $335.52    |
| **Current payment** 10/01/15    | **$1,195.09** |
| Unpaid payment 08/01/15-09/01/15 | $2,390.18  |
| **Total payment**               | **$3,585.27** |

Additionally, it included a "Payment date" of 10/01/15.

59.     On or around September 3, 2015, Wells Fargo sent Ms. Baker a statement dated

September 3, 2015. Therein Wells Fargo included the following "Payment summary":

| | |
|---|---|
| Principal | $274.90 |
| Interest | $584.67 |
| Escrow | $335.52 |
| **Current payment** 10/01/15 | **$1,195.09** |
| Unpaid payment 09/01/15 | $1,195.09 |
| **Total payment** | **$2,390.18** |

Additionally, it included a "Payment date" of 10/01/15.

60.     On or around September 16, 2015, Wells Fargo sent Ms. Baker a statement dated

September 16, 2015. Therein Wells Fargo included the following "Payment summary":

| | |
|---|---|
| Principal | $274.90 |
| Interest | $584.67 |
| Escrow | $335.52 |
| **Current payment** 10/01/15 | **$1,195.09** |
| Unpaid payment 09/01/15 | $1,195.09 |
| **Total payment** | **$2,390.18** |

Additionally, it included a "Payment date" of 10/01/15.

61.     On or around October 5, 2015, Wells Fargo sent Ms. Baker a statement dated October

5, 2015. Therein Wells Fargo included the following "Payment summary":

| | |
|---|---|
| Principal | $276.51 |
| Interest | $583.06 |
| Escrow | $335.52 |
| **Current payment** 11/01/15 | **$1,195.09** |
| Unpaid payment 10/01/15 | $1,195.09 |
| **Total payment** | **$2,390.18** |

Additionally, it included a "Payment date" of 11/01/15.

62.     On or around October 16, 2015, Wells Fargo sent Ms. Baker a statement dated

October 16, 2015. Therein Wells Fargo included the following "Payment summary":

| | |
|---|---|
| Principal | $276.51 |
| Interest | $583.06 |
| Escrow | $335.52 |
| **Current payment** 11/01/15 | **$1,195.09** |
| Unpaid payment 10/01/15 | $1,195.09 |
| **Total payment** | **$2,390.18** |

Additionally, it included a "Payment date" of 11/01/15.

63.     On or around November 4, 2015, Wells Fargo sent Ms. Baker a statement dated

November 4, 2015. Therein Wells Fargo included the following "Payment summary":

| | |
|---|---|
| Principal | $278.12 |
| Interest | $581.45 |
| Escrow | $335.52 |
| **Current payment** 12/01/15 | **$1,195.09** |
| Unpaid payment 11/01/15 | $1,195.09 |
| **Total payment** | **$2,390.18** |

Additionally, it included a "Payment date" of 12/01/15.

64.     On or around November 16, 2015, Wells Fargo sent Ms. Baker a statement dated

November 16, 2015. Therein Wells Fargo included the following "Payment summary":

| | |
|---|---|
| Principal | $278.12 |
| Interest | $581.45 |
| Escrow | $335.52 |
| **Current payment** 12/01/15 | **$1,195.09** |
| Unpaid payment 11/01/15 | $1,195.09 |
| **Total payment** | **$2,390.18** |

Additionally, it included a "Payment date" of 12/01/15.

65.     On or around December 4, 2015, Wells Fargo sent Ms. Baker a statement dated

December 4, 2015. Therein Wells Fargo included the following "Payment summary":

| | |
|---|---|
| Principal | $279.74 |
| Interest | $579.83 |
| Escrow | $335.52 |
| **Current payment** 01/01/16 | **$1,195.09** |
| Unpaid payment 12/01/15 | $1,195.09 |
| **Total payment** | **$2,390.18** |

Additionally, it included a "Payment date" of 01/01/16.

66.     On or around December 16, 2015, Wells Fargo sent Ms. Baker a statement dated

December 16, 2015. Therein Wells Fargo included the following "Payment summary":

| | |
|---|---|
| Principal | $279.74 |
| Interest | $579.83 |
| Escrow | $335.52 |
| **Current payment** 01/01/16 | **$1,195.09** |
| Unpaid payment 12/01/15 | $1,195.09 |
| **Total payment** | **$2,390.18** |

Additionally, it included a "Payment date" of 01/01/16.

67.     During the Bakers' Bankruptcy, Wells Fargo acted with conscious and intentional

disregard of and indifference to the rights of the Bakers and others, which Wells Fargo knew or

should have known was reasonably likely to result in injury, damages, or other harm.

**E.      Inaccurate Communications from Wells Fargo After Discharge**

68.     On or around January 4, 2016, Wells Fargo sent Ms. Baker a statement dated January

4, 2016. Therein Wells Fargo included the following "Payment summary":

| | |
|---|---|
| Principal | $281.37 |
| Interest | $578.20 |
| Escrow | $335.52 |
| **Current payment** 02/01/16 | **$1,195.09** |
| Unpaid payment 01/01/16 | $1,195.09 |

> **Total payment**          **$2,390.18**

Additionally, as of the statement date of January 4, 2016, Wells Fargo stated that the unpaid principal balance was $99,399.37.

69.     On or around January 19, 2016, Wells Fargo sent Ms. Baker a statement dated January 19, 2016. Therein Wells Fargo included the following "Payment summary":

| | |
|---|---|
| Principal | $281.37 |
| Interest | $578.20 |
| Escrow | $335.52 |
| **Current payment** 02/01/16 | **$1,195.09** |
| Overdue payment 01/01/16 | $1,195.09 |
| Unpaid late charge(s) | $34.38 |
| **Total payment due** 02/01/16 | **$2,424.56** |
| **After 02/16/16 a late charge may apply** | **$34.38** |

Additionally, as of the statement date of January 19, 2016, Wells Fargo stated that the unpaid principal balance was $99,399.37.

70.     $99,399.37 is $823.60 more than $98,575.77.

71.     On January 20, 2016, Wells Fargo sent Ms. Baker a letter regarding the Account. The subject of the letter was "Balance due on your mortgage account." It stated that there was $799.25 of unapplied funds on the Account and that Wells Fargo would hold those funds until it received the remaining $395.84 to complete the January 1, 2016 payment of $1,195.09. The letter further provided information regarding counseling agencies if Ms. Baker wanted to "help to avoid foreclosure."

72.     On January 21, 2016, Wells Fargo sent Ms. Baker an email requesting that she "pay the balance of [her] monthly mortgage payment." The email thanked her for her partial payment and stated that Wells Fargo would hold the funds until she makes the rest of her payment and then they

will apply the full amount to the Account. The email stated further, "Your mortgage will not be considered current until the full payment is applied." The email threatened a late charge if Wells Fargo did not receive Ms. Baker's full monthly payment by the end of the grace period, and solicited a telephone call "to pay the remaining balance."

73.     On or around January 21, 2016, Wells Fargo sent Ms. Baker an "Escrow account disclosure statement and notice of new mortgage payment." The disclosure statement stated, among other things, the following:

| | |
|---|---|
| **Next payment due date:** | January 01, 2016 |
| **New payment effective date:** | April 01, 2016 |
| **New payment amount:** | $1,328.28 |
| | |
| **Shortage amount:** | **$1,260.25** |
| **Principal balance:** | $99,399.37 |
| **Interest rate:** | 7.000% |
| **Statement date:** | January 21, 2016 |
| **Account review period:** | **May 2015 - Mar 2016** |

74.     On or about January 22, 2016, Brock & Scott, PLLC sent Ms. Baker and Mr. Baker a copy of a cover letter sent to the Franklin county clerk of Court, along with a dismissal document regarding the foreclosure initiated prior to the Bakers' Bankruptcy. The cover letter informed the Clerk of Court that the foreclosure had been cancelled. The dismissal document voluntarily dismissed the foreclosure without prejudice.

75.     On or around February 2, 2016, Wells Fargo sent Ms. Baker a statement dated February 2, 2016. Therein Wells Fargo included the following "Payment summary":

| | |
|---|---|
| Principal | $283.01 |
| Interest | $576.56 |
| Escrow | $335.52 |
| **Current payment** 03/01/16 | **$1,195.09** |

| Overdue payment 02/01/16 | $1,195.09 |
|---|---|
| Unpaid late charge(s) | $34.38 |
| **Total payment due** 03/01/16 | **$2,424.56** |
| **After 03/16/16 a late charge may apply** | **$34.38** |

Additionally, as of the statement date of February 2, 2016, Wells Fargo stated that the unpaid principal balance was $99,119.63.

76.     On or around February 16, 2016, Wells Fargo sent Ms. Baker a statement dated February 16, 2016. Therein Wells Fargo included the following "Payment summary":

| Principal | $283.01 |
|---|---|
| Interest | $576.56 |
| Escrow | $335.52 |
| **Current payment** 03/01/16 | **$1,195.09** |
| Overdue payment 02/01/16 | $1,195.09 |
| Unpaid late charge(s) | $68.76 |
| **Total payment due** 03/01/16 | **$2,458.94** |
| **After 03/16/16 a late charge may apply** | **$34.38** |

Additionally, as of the statement date of February 16, 2016, Wells Fargo stated that the unpaid principal balance was $99,119.63.

77.     $99,119.63 is $543.86 more than $98,575.77.

78.     On or around March 16, 2016, Wells Fargo sent Ms. Baker a statement dated March 16, 2016. Therein Wells Fargo included the following "Payment summary":

| Principal | $284.66 |
|---|---|
| Interest | $574.91 |
| Escrow | $468.71 |
| **Current payment** 04/01/16 | **$1,328.28** |
| Overdue payment 03/01/16 | $1,195.09 |
| Unpaid late charge(s) | $103.14 |
| **Total payment due** 04/01/16 | **$2,626.51** |
| **After 04/16/16 a late charge may apply** | **$34.38** |

Additionally, as of the statement date of February 16, 2016, Wells Fargo stated that the unpaid principal balance was $98,838.26.

79.     $98,838.26 is $262.59 more than $98,575.77.

80.     For the April 2016 payment, Ms. Baker knew that her payment had increased to $1,328.28 (due to both the "Escrow account disclosure statement and notice of new mortgage payment" and the March 16, 2016 Statement that Wells Fargo had sent her). Ms. Baker went to a Wells Fargo to make her mortgage payment, as she had done previously for several months. When she attempted to make the increased payment of $1,328.28 by check, the bank teller "Roya" told her that she could not take her check because it was for more than the amount of the payment. This problem occurred because Wells Fargo's records showed the payment amount as $1,195.09 due to the records incorrectly stating that the next payment was for March 2016 and not April 2016. The teller told Ms. Baker that she would apply the extra $133.19 to the Account's principal balance. Ms. Baker reluctantly agreed to have the extra $133.19 applied to the Account's principal balance. The receipt provided to Ms. Baker did not show that $133.19 was applied to the Account's principal balance, but the teller assured Ms. Baker that the $133.19 was applied to the Account's principal balance. Yet, Wells Fargo did not apply the $133.19 to the Account's principal balance.

81.     On or around April 5, 2016, Wells Fargo sent Ms. Baker a statement dated April 5, 2016. Therein Wells Fargo included the following "Payment summary":

| | |
|---|---|
| Principal | $286.32 |
| Interest | $573.25 |
| Escrow | $468.71 |
| **Current payment** 05/01/16 | **$1,328.28** |
| Overdue payment 04/01/16 | $1,328.28 |
| Unpaid late charge(s) | $103.14 |
| **Total payment due** 05/01/16 | **$2,759.70** |

**After 05/16/16 a late charge may apply       $34.38**

Additionally, as of the statement date of April 5, 2016, Wells Fargo stated that the unpaid principal balance was $98,555.25. Moreover, the extra $133.19 (from the increased payment made by Ms. Baker described in the previous paragraph) was not applied to the Account's principal balance, but instead to the Unapplied funds account.

82.     On or around April 8, 2016, Wells Fargo sent Ms. Baker a letter regarding the Account. The subject of the letter was "Balance due on your mortgage account." It stated:

> As of DUE 04/01/16 INV 690 PERSON CD N PMT LC 34.38 MIN LC  .00 IOE IND [sic], there is a balance of $932.44 in an unapplied funds account on your loan. Because we do not accept partial payments, we're unable to credit your account with these funds at this time. Instead, we'll hold these funds until we receive the remaining amount of $395.84 needed to apply the April 1, 2016 contractual payment of $1,328.28.

At the bottom of the letter it provided information to "avoid foreclosure."

83.     Wells Fargo called Ms. Baker on April 14, 2016, at 8:14 a.m.

84.     On April 18, 2016, Ms. Baker received two telephone calls from Wells Fargo, just two minutes apart. The calls were from (800) 678-7986. The first call rang twice and then stopped. The second call rang until the voice mail picked up, but no message was left. Such calls – calls that should not be made because the Account is current – disrupt Ms. Baker's workday and serve to remind her about the problems being caused by Wells Fargo and the impact they have had on her family.

85.     On or around April 18, 2016, Wells Fargo sent Ms. Baker a statement dated April 18, 2016. Therein Wells Fargo included the following "Payment summary":

| | |
|---|---|
| Principal | $286.32 |
| Interest | $573.25 |

| Escrow | $468.71 |
| **Current payment** 05/01/16 | **$1,328.28** |
| Overdue payment 04/01/16 | $1,328.28 |
| Unpaid late charge(s) | $103.14 |
| **Total payment due** 05/01/16 | **$2,759.70** |
| **After 05/16/16 a late charge may apply** | **$34.38** |

Additionally, as of the statement date of April 18, 2016, Wells Fargo stated that the unpaid principal balance was $98,555.25.

86.     On or around May 5, 2016, Wells Fargo sent Ms. Baker a statement dated May 5, 2016. Therein Wells Fargo included the following "Payment summary":

| Principal | $288.00 |
| Interest | $571.57 |
| Escrow | $468.71 |
| **Current payment** 06/01/16 | **$1,328.28** |
| Overdue payment 05/01/16 | $1,328.28 |
| Unpaid late charge(s) | $103.14 |
| **Total payment due** 06/01/16 | **$2,759.70** |
| **After 06/01/16 a late charge may apply** | **$34.38** |

Additionally, as of the statement date of May 5, 2016, Wells Fargo stated that the unpaid principal balance was $98,270.59.

87.     On April 26, 2016, in the evening just before 7pm, Ms. Baker received a telephone call from Wells Fargo, attempting to collect an allegedly past due amount owed by the Bakers. The representative told Ms. Baker that she was late in making the April payment. The representative acknowledged the $1,328.28 payment on April 4, but said that it was applied to the February payment. Ms. Baker was made very angry by this telephone call, as described further below.

88.     Ms. Baker has received several telephone calls where her telephone rang only once or twice with no message left.

89.    After the Bakers' Bankruptcy, Wells Fargo acted with conscious and intentional disregard of, and indifference to, the rights of the Bakers and others, which Wells Fargo knew or should have known was reasonably likely to result in injury, damages, or other harm.

**F.    Wells Fargo's Failure to Correct its Accounting Even After Receiving the Necessary Documentation from Ms. Baker Several Times**

90.    After receiving the January 21, 2016, email from Wells Fargo accusing her of making a partial payment and requesting that she "pay the balance of the monthly mortgage payment", Ms. Baker was confused because she had made all timely and all full payments since September 2015 and she had in her possession the documents filed in the Bankruptcy Case showing that even Wells Fargo had considered the Account current.

91.    Ms. Baker called Wells Fargo, was transferred several times, and spoke to someone that told her that she had an unapplied funds balance of $799.25 and that on December 31, 2015, there was a $61.42 payment made on the Account. However, the Wells Fargo employee could not tell Ms. Baker where the payment came from or the source of the unapplied funds balance. Instead, the employee gave Ms. Baker the telephone number for Wells Fargo's bankruptcy department. Ms. Baker spent 42 minutes on this call with Wells Fargo, and left the call with no new, useful information.

92.    After that 42 minute call, Ms. Baker did not have time to call the bankruptcy department. On January 25, 2016, Ms. Baker called the number provided to her on January 21; however, it did not connect her with the bankruptcy department. Instead, she was connected with the collections department. Ms. Baker was told that because her mortgage was one month behind, she was considered to be in default and the Account was sent to the collections department. Eventually, Ms. Baker was transferred to the bankruptcy department. There she was told that the bankruptcy

department could not help her because the Account was no longer in bankruptcy. Ms. Baker spent 30 minutes on this telephone call with Wells Fargo, and again left with no new or useful information.

93.     On January 27, 2016, Ms. Baker called Wells Fargo, was transferred several times, and ended up with the Resolutions department, speaking with Christa Lennie. Ms. Lennie was impatient with Ms. Baker as she told the story of the Account, the Bankruptcy Case, and the claims by Wells Fargo that the Account was delinquent and a month behind. Finally, after speaking with Ms. Lennie for quite some time, Ms. Lennie seemed to understand what had transpired. Ms. Lennie assured Ms. Baker that she would be the Wells Fargo employee that would be assigned to the case to work toward a resolution. She told Ms. Baker to fax her the Court documents showing that the Account was current. This telephone call with Wells Fargo lasted 42 minutes.

94.     On January 28, 2016, Ms. Baker sent and Wells Fargo received a 17-page facsimile, explaining that the mortgage was deemed current through the August 2015 payment and that she has made all payments from September 2015 through January 2016. On the cover page of the facsimile, Ms. Baker stated, among other things:

> -that the mortgage was declared current through August 2015;
>
> -that she has made all payments from September 2015 through January 2016; and
>
> -that she had been told by Wells Fargo that the May payment was short, however, the Trustee's accounting showed $1,195.09 was paid for each month from May through August 2015.

Additionally, Ms. Baker included with the facsimile the following documents:

> -The August 10, 2015 letter from Trustee John F. Logan instructing her to resume making mortgage payments in the amount of $1,195.09 directly to Wells Fargo, beginning with the payment due on September 1, 2015;
>
> -Trustee Logan's Notice of Final Cure Payment and Completion of Payments Under the Plan;

-Wells Fargo's own Response to Notice of Final Cure Payment;

-Trustee Logan's Motion to Declare Mortgage Payment Current, with Exhibit 1 and Notice of Motion; and

-The January 22, 2016, letter and dismissal document sent to Ms. Baker and Mr. Baker by Brock & Scott, PLLC.

95.     That same day, on January 28, 2016, Ms. Baker received a telephone call from Wells Fargo employee Shane Kelly. He told Ms. Baker that he had been assigned to the case because Ms. Lennie was not available. Because of that, Ms. Baker had to retell her story yet another time. Mr. Kelly asked Ms. Baker to fax to him all of the documents and information that she had already faxed to Ms. Lennie. Ms. Baker did so. Ms. Baker heard back from Mr. Kelly on February 8, 2016, to ask for clarifying information during a short, three minute call.

96.     Ms. Baker next spoke with Mr. Kelly on February 12, 2016. Mr. Kelly claimed that Wells Fargo had not received a payment from the Trustee for December 2011. Ms. Baker told him that the Trustee's Motion to Declare the Mortgage Payment and its Exhibit 1 (which showed all payments disbursed to Wells Fargo by the Trustee) showed that the payment had been made. Ms. Baker also referenced paragraphs 3, 4, and 7 of the Motion, which recited the amounts Wells Fargo had received for post-petition mortgage payments and the pre-petition arrearage, as well as noting that Wells Fargo filed a Response to the Notice of Final Cure agreeing that the Bakers were current through August 21, 2015. Mr. Kelly told Ms. Baker that the Motion was not an official document and did not prove anything. Ms. Baker attempted to convince Ms. Kelly that the Motion was, indeed, an official Bankruptcy Court document.

97.     Ms. Baker attempted to use yet another Bankruptcy Court document to explain why there was no missed payment in December 2011; in fact, she used Wells Fargo's Response to the Notice of Final Cure, in which Wells Fargo agreed that 1) the Bakers had paid in full the amount

required to cure the default on the Account; 2) the Bakers were current with all post-petition payments, and that there remained $0.00 in claims uncured by the Bakers. Mr. Kelly was not convinced and continued to argue at Ms. Baker, telling her that she was one month behind, that the December 2011 payment had not been made, and that what he said was true no matter what the Court documents stated. Mr. Kelly told Ms. Baker that she had to prove that the December 2011 payment had been made by sending him a cancelled check from the Trustee. He finished by telling Ms. Baker that, as far as he was concerned, Ms. Baker's inquiry with him had been answered and that if she wanted to move forward, she would have to open a new inquiry by requesting a payment history. He provided a fax number and ended the call. Ms. Baker was extremely upset, frustrated, and angry. Mr. Kelly's conduct and flippant attitude regarding Ms. Baker's mortgage Account left Ms. Baker in tears. This call with Mr. Kelly lasted 29 minutes.

98.     Ms. Baker contacted her attorney's office. On February 12, 2016, Kelly Cox, a paralegal with the Bakers' attorney's office, sent Mr. Kelly a 23-page facsimile. Ms. Cox included with the facsimile the following documents:

> -The Trustee's internal accounting document, showing all payments to Wells Fargo;
>
> -Judge Warren's Order Declaring Mortgage Payment Current;
>
> -The Bankruptcy Court's Discharge Order and Certificate of Notice from the Bankruptcy Noticing Center; and
>
> -The Trustee's Final Report and Account and Notice Thereof and Certificate of Service from the Bankruptcy Noticing Center.

99.     On February 12, 2016, Wells Fargo sent a one-page letter to Ms. Baker, responding to her claim that the mortgage should be considered current with no late charges. The letter stated, among other things:

> After reviewing your concern about your mortgage being past due,

we've found no error occurred and won't be making any adjustments to your account.

We received the first payment from the bankruptcy trustee January 25, 2011, which covered the prior four months of due payments. From December 2011, our records indicate the account continually showing one month past due which has yet to be resolved.

***

Sincerely,
[signature of Shane C Kelly]
Shane Kelly

100. On February 23, 2016, in line with Mr. Kelly's direction that a new inquiry had to be initiated by requesting a payment history, Ms. Baker sent a one-page facsimile to Wells Fargo requesting her payment history and noting that Wells Fargo misapplied one or more payments from the Chapter 13 Trustee in December 2011. On February 24, 2016, Wells Fargo sent a letter to Ms. Baker acknowledging her request.

101. On or about February 24, 2016, Ms. Baker received a telephone call from Wells Fargo employee Patrick Timmons. Mr. Timmons told Ms. Baker that he had received her facsimile and would be handling her inquiry.

102. On March 3, 2016, Ms. Baker briefly spoke with Mr. Timmons to confirm that she had requested the payment history on the Account. Mr. Timmons provided the payment history to Ms. Baker.

103. Ms. Baker traveled to a nearby Wells Fargo each month to make her mortgage payment in person. Nearly each time she did so, the Wells Fargo teller had a problem with the Account. For example, the tellers frequently have been unable to find the Account and have taken extended periods of time to search for it. Frequently, there were other customers in line and so Ms. Baker experienced stress and discomfort due to the spectacle made of the situation by Wells Fargo

– which differed from other customers whose accounts were evidently located expeditiously.

104.     On March 3, 2016, Ms. Baker went to Wells Fargo to make her March 2016 payment. Wells Fargo teller Douglas said – loud enough for other customers to hear – that he could not find the Account because the Bakers were behind and the Account was delinquent. This false and demeaning statement made by a Wells Fargo employee – loud enough for others to hear – was embarrassing to Ms. Baker. The Bakers were not behind and the Account was not delinquent. The teller's impudent conduct forced Ms. Baker to explain to the teller that the Account was not delinquent, that she and her husband were not behind in their payments, and that any error was Wells Fargo's and not theirs. The teller's conduct forced Ms. Baker to do so loudly, so that the other customers that overheard the teller's false accusation would hear the truth.

105.     After the Order of Discharge and while the Bakers have continued to make timely payments to Wells Fargo, on numerous occasions Wells Fargo has attempted to collect the pre-petition claim from the Bakers.

106.     Wells Fargo has sent the Bakers statements claiming false and exorbitant past-due and principal balances.

107.     Upon information and belief, Wells Fargo made attempts by telephone, mail, and email to collect amounts not owed or that had already been paid that are in addition to those attempts described here.

108.     Upon information and belief, Wells Fargo furnished inaccurate credit information to credit reporting agencies regarding the Bakers.

**G.     The Effect of Wells Fargo's Conduct on the Bakers**

109.     Ms. Baker and Mr. Baker allege the following in addition to those previous allegations that describe or reference the effect of Wells Fargo's conduct on them.

110.     The filing of the Bakers' Bankruptcy had a negative effect on their relationship. They had to scrape and save for five years to have barely enough to cover their Chapter 13 Plan payments, which allowed them to save their house. Ms. Baker and Mr. Baker argued a lot and had shortened tempers, which caused mountains to be made of molehills. The financial stress – which was present throughout the bankruptcy – caused a rift in their marriage and they felt as though they were growing apart.

111.     Additionally, during the bankruptcy, Wells Fargo's decision regarding an unrelated home equity line of credit forced the Bakers to increase their Chapter 13 Plan payment by 20% from approximately $1,750 to $2,140 per month. This increase caused significant stress on the Bakers' finances, including requiring them to borrow money from relatives. The Bakers' marriage suffered as well. Nevertheless, the Bakers made their payments and the Bakers completed their bankruptcy in accordance with the law.

112.     Once they finished their Chapter 13 Plan payments the Bakers began to breathe easier and they got along better with each other as they started to make their regular, monthly mortgage payments. The Bakers were ready to rebuild their credit. It is against this backdrop that Wells Fargo's unconscionable conduct hit them like a ton of bricks and began taking an unwarranted toll on the Bakers and their children. The Bakers had earned their fresh start, but Wells Fargo denied that to them – and Wells Fargo continues to deny to them that fresh start promised by the Bankruptcy Code.

113.     Wells Fargo's conduct after the bankruptcy caused the stress to reenter and disrupt the Bakers' lives. The stress has brought back the arguments and shortened tempers. Ms. Baker hesitates to bring up an financial issues with Mr. Baker because she fears that it will start another argument between them. They argue more than they had before. The arguing has caused their

children and other family members to be stressed as well.

114.    Ms. Baker has had to put considerable time into attempting to correct Wells Fargo's mistakes. Wells Fargo has forced Ms. Baker to spend that time on its errors, and has forced Ms. Baker to do so at the expense of her kids. On many occasions, Ms. Baker has had to choose to devote time to fixing Wells Fargo's mistakes instead of devoting that time to her children, which has caused distance between Ms. Baker and her children.

115.    The telephone calls with Wells Fargo, the consistent string of missed telephone calls from Wells Fargo, the many statements received in the mail claiming that the Bakers are behind and owe more than they actually do – all of these cause stress and anger for the Bakers. Whenever any of these instances take place, Ms. Baker is short tempered with her kids. Whenever any of these instances take place, Ms. Baker becomes distracted around her kids, causing her not to adequately hear and consider things that her children are telling her. Wells Fargo's conduct has caused Ms. Baker to act in a way that hurts her children's feelings. There are times when her children want to talk to her, but she is unable to at the time due to the stress caused by Wells Fargo; when she is ready to talk, her children often no longer want to. Ms. Baker cannot get back that time with her kids.  Ms. Baker's unavailability for her kids causes them to bottle up their feelings, which leads to more stress for them down the road. Her unavailability also causes them to question the notion that she is always there for them and always available to listen to them, which causes significant anxiety for her and her children.

116.    The Bakers' children observe the way that their mother and father react to the situation with Wells Fargo. Their children can sense when they are worried or frustrated and they, themselves,  become worried as well. Their children become worried and anxious that their parents are going to lose their house, and have even offered to give to their parents their piggy bank money

to help.

117.    Wells Fargo has caused the Bakers' children to worry that their parents are going to divorce, which in turn caused the Bakers significant emotional distress.

118.    The Bakers' son has had migraine headaches due to the stress and anxiety caused by Wells Fargo. The Bakers' daughter has had panic attacks due to the stress and anxiety caused by Wells Fargo. Ms. Baker has a dermatological medical condition that flares up any time she has severe stress, and it has been continually exacerbated since the telephone calls from Wells Fargo started in January 2016.

119.    Ms. Baker has suffered embarrassment due to Wells Fargo's conduct. Indeed, the teller that loudly and falsely claimed that the Bakers were behind in payments and the Account was delinquent embarrassed Ms. Baker in front of other Wells Fargo customers.

120.    Ms. Baker was left angry and frustrated after making her April 2016 payment when the Wells Fargo teller told her that an amount would be applied to the principal balance, but was instead put into an unapplied funds account. The additional amount should have reduced the Bakers' principal balance; instead, it is sitting, useless, in a Wells Fargo unapplied funds account.

121.    Every payment Ms. Baker made at Wells Fargo left her frustrated and angry. The tellers would rarely find the Account in a timely fashion. There were often other problems caused by Wells Fargo. These experiences caused Ms. Baker to be angry and frustrated and in a generally bad mood for the rest of the day. These terrible experiences both caused and exacerbated the strife between Ms. Baker and Mr. Baker, as well as between Ms. Baker and their children.

122.    The string of January telephone calls with Wells Fargo caused Ms. Baker to be very upset and frustrated with Wells Fargo's customer service and the handling of the Account. Wells Fargo forced her to explain the problem to numerous employees and to fax Court documents to

Wells Fargo that she had faxed previously and with which Wells Fargo had been served by the Court months before.

123.    Ms. Baker's 29 minute telephone call with Mr. Kelly, wherein he refused to acknowledge the authority of documents filed with and by the Bankruptcy Court and ignored Ms. Baker's actual concern, instead pushing her off and telling her to initiate a new inquiry with Wells Fargo, left Ms. Baker extremely angry, frustrated, and upset, and in tears. Ms. Baker's children were very worried about their mother and about what could have made her cry simply from a telephone call. Her kids became very upset after seeing her reaction to that telephone call.

124.    The April 26 telephone call from Wells Fargo was a short call, but it had a significant effect on Ms. Baker and her children. She was in the middle of a conversation with her son when Wells Fargo called. The representative told her she was behind and that the payment made in April was applied to February. The telephone call upset Ms. Baker. She was shaking and had to sit to calm down. Ms. Baker was never able to reconvene the conversation with her son, but instead was short-tempered with him. After the telephone call she was also short-tempered with her husband.

125.    Wells Fargo has caused Ms. Baker and Mr. Baker to feel helpless, frustrated, angry, and to suffer severe emotional distress and fear from dealing with a large company that would not follow the law or Court orders. Wells Fargo employees repeatedly told Ms. Baker that she was wrong.

126.    Wells Fargo has made the Bakers want to give up and pay Wells Fargo whatever it demands simply to make the nightmare end.

127.    Ms. Baker and Mr. Baker each demand a jury trial over all claims asserted herein.

**V.     COUNT I - 11 U.S.C. § 524**

128.    Plaintiffs incorporate herein all previous allegations.

129. The Bakers made all payments required during their Chapter 13 plan, and Trustee Logan made all payments related to the Account.

130. The Bakers have timely made all required post-petition payments related to the Account.

131. Wells Fargo failed to properly apply Chapter 13 Trustee payments during the pendency of the Bakers' Chapter 13 Plan, and improperly applied post-petition payments. Wells Fargo's actions have resulted in improper accounting of the Account and subsequent demands for improper payment, in violation of the discharge injunction.

132. The Discharge Order was served on Wells Fargo. As a result, Wells Fargo had notice and knowledge of the Discharge Order, which was in the Bakers' favor. *See Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000).

133. Moreover, Wells Fargo filed a Response to Notice of Final Cure, stating that the Account was current and the arrearage paid in full.

134. Wells Fargo was aware of the Chapter 13 Plan completion and discharge injunction. Wells Fargo's repeated requests for payment of past-due amounts from the Bakers are willful violations of the Discharge Order.

135. As a result, the Bakers have suffered, among other maladies described above, emotional distress, severe anxiety, lost time, and disruption of their and their children's daily lives from Wells Fargo's repeated attempts to collect past-due amounts, which violate 11 U.S.C. § 524(a)(2).

136. The Bakers are entitled to recover damages from Wells Fargo, both actual and punitive, and are further entitled to recover their reasonable costs and attorney's fees, pursuant to 11 U.S.C. § 105(a).

137. It is Wells Fargo's pattern and practice to fail to account payments during a Chapter 13 plan, or otherwise to violate the discharge injunction and the bankruptcy code.

## VI.    COUNT II - NORTH CAROLINA DEBT COLLECTION ACT

138. Plaintiffs incorporate herein all previous allegations.

139. Wells Fargo's violations of the NCDCA include, but are not limited to:

    A.    Attempting to collect any debt by means of any unfair threat, coercion, or attempt to coerce, in violation of N.C.Gen.Stat. § 75-51;

    B.    Making or threatening to make false accusations to any other person, including any credit reporting agency, that a consumer has not paid, or has willfully refused to pay a just debt, in violation of N.C.Gen.Stat. § 75-51(3);

    C.    Threatening to take any action not permitted by law, in violation of N.C.Gen.Stat. § 75-51(8);

    D.    Using any conduct, the natural consequence of which is to oppress, harass, or abuse any person in connection with the attempt to collect any debt, in violation of N.C.Gen.Stat. § 75-52;

    E.    Attempting to collect a debt by any fraudulent, deceptive, or misleading representation, in violation of N.C.Gen.Stat. § 75-54;

    F.    Falsely representing the character, extent, or amount of a debt against a consumer, in violation of N.C.Gen.Stat. § 75-54(4);

    G.    False representing that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges, in violation of N.C.Gen.Stat. § 75-54(6); and

    H.    Attempting to collect any debt by use of any unconscionable means, in violation of N.C.Gen.Stat. § 75-55.

## VII.    COUNT III - NORTH CAROLINA COLLECTION AGENCY ACT (alternatively)

140. Plaintiffs incorporate herein all previous allegations.

141. If the Court finds that Defendant is not subject to N.C.Gen.Stat. § 75-50, Plaintiffs allege alternatively that Defendant is subject to N.C.Gen.Stat. § 58-70-90 and its violations of the

NCCAA include, but are not limited to:

    A.    Attempting to collect any debt by means of any unfair threat, coercion, or attempt to coerce, in violation of N.C.Gen.Stat. § 58-70-95;

    B.    Making or threatening to make false accusations to any other person, including any credit reporting agency, that a consumer has not paid, or has willfully refused to pay a just debt, in violation of N.C.Gen.Stat. § 58-70-95(3);

    C.    Threatening to take any action not permitted by law, in violation of N.C.Gen.Stat. § 58-70-95(8);

    D.    Using any conduct, the natural consequence of which is to oppress, harass, or abuse any person in connection with the attempt to collect any debt, in violation of N.C.Gen.Stat. § 58-70-100;

    E.    Attempting to collect a debt by any fraudulent, deceptive, or misleading representation, in violation of N.C.Gen.Stat. § 58-70-110;

    F.    Falsely representing the character, extent, or amount of a debt against a consumer, in violation of N.C.Gen.Stat. § 58-70-110(4);

    G.    False representing that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges, in violation of N.C.Gen.Stat. § 58-70-110(6); and

    H.    Attempting to collect any debt by use of any unfair practices, in violation of N.C.Gen.Stat. § 58-70-115.

WHEREFORE, Angela Baker and Billy Baker request that judgment be entered in their favor and against Wells Fargo Bank, N.A. for:

    1.    Actual damages, pursuant to 11 U.S.C. § 105(a), N.C.Gen.Stat. 75-56(b)(i) trebeled pursuant to N.C.Gen.Stat. § 75-16, and (alternatively) N.C.Gen.Stat. § 58-70-130(a);

    2.    Punitive damages, pursuant to 11 U.S.C. § 105(a) and N.C.Gen.Stat. § 1D-15;

    3.    Civil penalties, pursuant to N.C.Gen.Stat. § 75-56(b)(ii) and (alternatively) N.C.Gen.Stat. § 58-70-130(b) ;

    4.    Costs and attorney fees, pursuant to 11 U.S.C. § 105(a), and N.C.Gen.Stat. § 75-16.1; and

5.      Such other relief this Court may deem to be just and proper.

LAW OFFICES OF JOHN T. ORCUTT, P.C.

/s/ Craig M. Shapiro
Craig M. Shapiro
Attorney for Plaintiffs
Law Offices of John T. Orcutt, P.C.
6616 Six Forks Road, Suite 203
Raleigh, North Carolina 27615
Telephone: (919) 847-9750
Fax: (919) 847-3439
Email: cshapiro@johnorcutt.com
State Bar No. 48887